**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MICHAEL ALEXANDER,

     Plaintiff,

               v.

OFFICER J. LENCREROT and YAMILEE
JEAN-PHILIPPE,

     Defendants.

Civil Action No.
1:21-cv-04846-SDG

## <u>OPINION AND ORDER</u>

This matter is before the Court on motions to dismiss the Second Amended

Complaint (SAC) by Defendant Yamilee Jean-Philippe [ECF 25] and Defendant

Jasiah Lencrerot [ECF 27], as well as Lencrerot's motion for summary judgment

[ECF 29]. For the following reasons, the Court **GRANTS** Jean-Philippe's motion

to dismiss the SAC [ECF 25]. Lencrerot's motion for summary judgment [ECF 29]

is **GRANTED**. The Court **DENIES as MOOT** Lencrerot's motion to dismiss [ECF

27].

## I.      Background

### A.      Procedural History

Plaintiff Michael Alexander filed this lawsuit in the Superior Court of Fulton County, Georgia on June 28, 2021.[1] On November 24, Jean-Philippe removed the case to this Court.[2] On December 2, she filed a motion to dismiss the initial complaint,[3] and on December 7, Lencrerot filed a general denial of the allegations against him and requested to dismiss the case.[4] Then, on December 22, Alexander filed the First Amended Complaint (FAC).[5] As such, the Court denied as moot Defendants' motions.[6]

---

[1]   ECF 1-1, at 16. Alexander filed this lawsuit over two years after the events giving rise to his complaint took place, but no party raised the applicable statute of limitations as a defense to any of Alexander's claims—including in response to any of Alexander's amended pleadings. Consequently, that argument is deemed waived. *R&R Int'l Consulting LLC v. Banco do Brasil, S.A.*, 981 F.3d 1239, 1245 (11th Cir. 2020) (citing *John R. Sand & Gravel Co. v United States*, 552 U.S. 130, 133 (2008); Fed. R. Civ. P. 8(c)(1)) ("[T]he statute of limitations is an affirmative defense that can be forfeited or waived.").

[2]   ECF 1.

[3]   ECF 3.

[4]   ECF 5.

[5]   ECF 9, at 1. The FAC incorporated by reference the original Complaint.

[6]   ECF 22.

On January 5, 2022, Jean-Phillipe moved to dismiss the FAC.[7] On September 30, the Court granted the motion, dismissed the related Section 1983 false arrest claim against Lencrerot,[8] and reserved ruling on the state law claims against Lencrerot.[9] The Court permitted Alexander to file an amended complaint.[10]

On October 14, Alexander filed the SAC.[11] On October 28, Jean-Phillipe again moved to dismiss.[12] On October 31, Lencrerot, proceeding *pro se,* answered and filed a motion to dismiss in which he requested to adopt Jean-Phillipe's motion.[13] Then, on May 26, 2023, Lencrerot filed an additional motion, this time requesting summary judgment.[14] Alexander did not respond to the motions to

---

[7]   ECF 12.

[8]   ECF 22. While only Jean-Philippe expressly moved to dismiss the Section 1983 claim against her, the Court also dismissed the federal claim against Lencrerot because the two claims were "integrally related." *Loman Dev. Co. v. Daytona Hotel & Motel Suppliers, Inc.*, 817 F.2d 1533, 1537 (11th Cir. 1987) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.").

[9]   ECF 22.

[10]   *Id.*

[11]   ECF 24.

[12]   ECF 25.

[13]   ECF 26; ECF 27.

[14]   ECF 29.

dismiss, so the Court deems them unopposed. He did, however, timely respond to the motion for summary judgment and submit a Statement of Material Facts.[15]

### B.   Factual Allegations

To this point, the Court has been presented with Alexander's version of the facts and video footage of the physical altercation. The Court accepts the well-pled factual allegations in the SAC as true for purposes of the motions to dismiss and construes them in the light most favorable to Alexander except as the video contradicts them. *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (citing *Scott v. Harris,* 550 U.S. 372 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")). The factual allegations in the SAC appear nearly identical to those in the FAC, but the SAC includes a few modified and additional legal contentions discussed below as necessary.

On May 20, 2019, Alexander was in a Fulton County State Court attending to a matter that required him to appear as a witness.[16] Lencrerot, an officer with

---

15   ECF 30 (SMF); ECF 31 (Resp. to SJM).

16   ECF 24, ¶ 6.

the Atlanta Police Department, was also present at the courthouse as a "witness or arresting officer."[17] Jean-Philippe, a Sheriff's Deputy, was working as a security officer in the courtroom in which Alexander and Lencrerot were scheduled to testify.[18]

Inside the courtroom, Jean-Philippe announced the courtroom phone etiquette protocol.[19] Alexander verbally disputed the policy.[20] Jean-Philippe eventually asked Alexander to leave the courtroom, and Alexander, Jean-Philippe, and Lencrerot all exited the courtroom.[21] It is around this time that the video footage begins.[22]

---

[17]   *Id*. ¶ 5.

[18]   *Id*. ¶ 6.

[19]   *Id*.

[20]   In both the FAC and SAC, Alexander alleges he disputed the policy because his girlfriend had recently given birth. ECF 9, ¶ 5; ECF 24, ¶ 6. In his affidavit, Alexander swears he disputed the policy because his 14-year-old son was in the hospital recovering from surgery alone. ECF 31-1, ¶ 10. The Court sympathizes with Alexander's circumstances, whatever they may be, but notes that they do not vitiate Alexander's requirement to follow courtroom procedures or an officer's lawful order. In other words, these allegations, consistent or not, have no legal effect on the outcome of this case.

[21]   ECF 24, ¶¶ 6–10.

[22]   ECF 15.

Outside the courtroom, Lencrerot approached Alexander, and "stood in Mr. Alexander's face and proceeded to poke his finger in Mr. Alexander's face."[23] Alexander felt antagonized by this interaction.[24] He gestured with his arm in the air, shouted multiple profanities at Lencrerot, and poked his own fingers in Lencrerot's face.[25] Lencrerot reacted by slamming Alexander to the floor and placing him under arrest.[26] The video footage confirms that Lencrerot did not use any additional force after effecting Alexander's arrest.[27] Jean-Philippe observed the entire altercation and ultimately assisted with the arrest.[28]

Lencrerot's initial seizure of Alexander occurred without a warrant. Jean-Philippe then prepared an incident report and procured a warrant.[29] Alexander claims Jean-Philippe falsely stated in the incident report that he had refused to

---

[23]   ECF 24, ¶ 8.

[24]   *Id*.

[25]   ECF 15; ECF 24, ¶ 9.

[26]   *Id*.

[27]   ECF 15.

[28]   ECF 24, ¶ 10.

[29]   *Id*. ¶ 11.

follow a lawful order.[30] Eventually, Alexander was charged with two counts of obstruction of a police officer and one count of disorderly conduct.[31]

Alexander, an amputee who uses a prosthetic leg, suffered unspecified injuries to his skull, wrist, leg, and arm, developed chronic headaches and blurred vision, and required treatment for a leg infection, all of which he attributes to the takedown.[32]

## II.    Discussion

Alexander alleges causes of action under both federal and state law. Count I, asserted only against Lencrerot, is for excessive force under 42 U.S.C. § 1983.[33] Count II asserts claims for malicious prosecution under 42 U.S.C. § 1983 against both Jean-Philippe and Lencrerot.[34] Finally, Counts III and IV for simple assault, simple battery, and battery under Georgia law are brought only against Lencrerot.[35] Taken together, the motions to dismiss and for summary judgment address each of these claims; they are discussed in turn.

---

[30]    *Id.*

[31]    *Id.*

[32]    *Id.* ¶ 12.

[33]    *Id.* ¶¶ 13–18.

[34]    *Id.* ¶¶ 19–23.

[35]    *Id.* ¶¶ 24–29.

### A.     The Motions to Dismiss

#### 1.     Legal Standard

Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must [ ] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570).

A complaint is facially plausible when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must also present sufficient facts to "'raise a reasonable expectation that

discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556).

### 2.    Analysis

In her motion to dismiss, Jean-Philippe argues that Alexander does not state a claim for malicious prosecution.[36] Jean-Philippe also asserts that qualified immunity bars all claims against her because she had arguable probable cause to arrest Alexander.[37] She further contends that Eleventh Amendment immunity bars all official capacity claims against her.[38]

Because Lencrerot continues to proceed *pro se*, the Court construes his filings leniently. *Compare Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (holding that courts should apply less stringent standards to pleadings drafted by *pro se* parties than to pleadings drafted by lawyers) (citations omitted); *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam) (same). Taken in this light, Lencrerot

---

[36]   ECF 25-1, at 2.

[37]   *Id*. at 3.

[38]   *Id*. While the SAC caption names Defendants in their official capacity and Defendants consequently asserted Eleventh Amendment immunity, the issue need not be reached because Alexander's claims are not official capacity claims. Section 1983 defendants must be persons within the meaning of the statute to be subject to suit, and officers sued in their official capacities are not Section 1983 persons. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).

argues that he had probable cause to arrest Alexander.[39] Lencrerot further asserts, in both his motions to dismiss and for summary judgment, that qualified immunity bars all claims against him.[40]

Alexander did not respond to Defendants' motions to dismiss. When a plaintiff fails to respond to a motion to dismiss, the district court may (1) "permit the plaintiff[ ] to file out of time an opposition brief addressing the defendants' arguments raised in their motion to dismiss or (2) consider only the defendants' arguments and the complaint's allegations." *Giummo v. Olsen*, 701 F. App'x 922, 925 (11th Cir. 2017). Under either course, "the district court must address the merits of the defendants' motion to dismiss." *Id*. Considering his subsequent motion for summary judgment, which raises the same arguments as his motion to dismiss, the Court deems Lencrerot's motion to dismiss moot. However, because Alexander did not request leave to file an out-of-time response to either motion to dismiss, the Court considers only Jean-Phillipe's arguments and the SAC's allegations.

Last time, the Court dismissed Alexander's Section 1983 claims in part because they were improperly pled as false arrest claims and because Alexander

---

[39]   ECF 27.

[40]   ECF 27; ECF 29.

did not plausibly allege that Defendants lacked probable cause to arrest him.[41] The existence of probable cause bars claims for both malicious prosecution and false arrest. *Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020) (indicating a lack of probable cause is necessary to establish a Section 1983 malicious prosecution claim); *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) ("An arrest made with probable cause . . . constitutes an absolute bar to a section 1983 action for false arrest.") (citation omitted).

This time, though the SAC properly pleads Alexander's cause of action as malicious prosecution, it fails to allege any new facts to support the required contention that Defendants lacked probable cause. The SAC itself illustrates that there was probable cause to arrest Alexander because a prudent person would rightfully have believed Alexander committed a criminal offense in his altercation with Lencrerot. *Taylor v. Taylor*, 649 F. App'x 737, 743 (11th Cir. 2016) (In the context of a malicious prosecution claim, "[p]robable cause exists when the facts and circumstances . . . would cause a prudent person to believe that the suspect has committed, is committing, or is about to commit an offense."). Alexander's allegations to the contrary, despite their more correct packaging as a malicious

---

[41] ECF 22, at 7–11. "But even if the Court treats Alexander's claims as ones for malicious prosecution, his federal claims still fail." *Id.* at 8.

prosecution claim, remain nothing more than conclusory statements. Therefore, Jean-Philippe's motion to dismiss the SAC is **GRANTED**. Alexander's malicious prosecution claim against Jean-Phillipe is **DISMISSED WITH PREJUDICE**.

### B.     Motion for Summary Judgment

#### 1.     Legal Standard

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324.

In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment,

"and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477

U.S. at 255; *see also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999).

"Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions," and cannot be made by the

court in evaluating summary judgment. *Anderson*, 477 U.S. at 255; *see also Graham

v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Summary judgment

for the moving party is proper "[w]here the record taken as a whole could not lead

a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co.

v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### 2.   Analysis

#### i.   Malicious Prosecution

Lencrerot's motion for summary judgment does not dispute any factual

allegations in the SAC, which, as discussed above, fail to state a claim for malicious

prosecution even accepted as true. Rather, the Court understands the motion as

arguing both that Lencrerot's actions were reasonable as a matter of law and

protected by qualified immunity.[42] Alexander's response, which could not

surmount the more deferential motion-to-dismiss standard, likewise fails under

the more exacting scrutiny of summary judgment. Thus, Alexander's malicious

---

[42]   ECF 29.

prosecution claim against Lencrerot fails as a matter of law. Lencrerot's motion for summary judgment is **GRANTED** as to the malicious prosecution claim, and that claim is **DISMISSED WITH PREJUDICE**.

### ii.   Excessive Force and Qualified Immunity

Further, even considering the undisputed facts and the video evidence in the light most favorable to Alexander, the Court finds that Alexander's excessive force claim cannot overcome Lencrerot's qualified immunity defense.

Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). There is no qualified immunity (1) if there was a constitutional violation and (2) that violation was of a clearly established right. *Rodriguez v. Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002). Because qualified immunity is "an immunity from suit rather than a mere defense to liability," *Pearson v. Callahan*, 555 U.S. 223, 237 (2009), it should be decided at the earliest possible stage of the litigation. *Mitchell v. Forsyth*, 427 U.S. 511, 526 (1985) (observing that the entitlement to qualified immunity is "effectively lost if a case is erroneously permitted to go to trial.").

To establish qualified immunity, the public official must first show that he was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). This element is easily met: it is well-established that making arrests is a core discretionary function of the police. *See Lee v. Ferraro*, 284 F.3d 1188, 1194–95 (11th Cir. 2002) (citation omitted) (acknowledging that making arrests is within the discretionary capacity of police officers); *see also Graham v. Connor*, 490 U.S. 386, 396 (1989) (discussing "the right to make an arrest"). Nothing about Alexander's conclusory allegation to the contrary disturbs this settled point of law.[43] Thus, Lencrerot has sufficiently established that he was acting within the scope of his discretionary authority at the time of the alleged wrongful acts.

The burden then shifts to Alexander to show that Lencrerot is not entitled to qualified immunity. *Vinyard*, 311 F.3d at 1346. Alexander alleges Lencrerot's actions violated the Fourth Amendment.[44] While the Fourth Amendment guarantees the right to be free from the use of excessive force during the course of an arrest, an officer's "right to make an arrest [ ] necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490

---

[43]   ECF 31, at 3.

[44]   *Id.* at 8.

U.S. at 396. It is well-established in this Circuit that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Alexandre v. Ortiz*, 789 F. App'x 169, 174 (11th Cir. 2019) (quoting *Saucier v. Katz*, 533 U.S. 194, 209 (2001)).

At bottom, excessive force claims under the Fourth Amendment are subject to an "objective reasonableness" standard. *Graham*, 490 U.S. at 388. That reasonableness is determined from the perspective of a reasonable officer on the scene, *id.* at 396, and in doing so, the Court must deem "irrelevant" the officer's subjective intentions. *Taylor*, 659 F. App'x at 746 (citing *Graham*, 490 U.S. at 397). In the Court's view, Lencrerot's behavior was distasteful and not exemplary of how a police officer should act. However, viewed objectively, Lencrerot's finger-poke does not amount to constitutionally prohibited excessive force, and the takedown was less severe than the force the Eleventh Circuit has described as *de minimis* and lawful in other materially similar cases.

Recently, in *Alexandre*, the plaintiff was part of a crowd celebrating a basketball victory into the early hours of the morning. 789 F. App'x at 175. A police officer ordered the plaintiff to move off of the street; though the plaintiff complied with the officer's order and moved to the sidewalk, he shouted profanities at the officer, leaned over a woman on the sidewalk, and lifted his phone to record the

police. *Id.* The defendant officer grabbed the plaintiff in a headlock, wrestled him to the ground, and arrested him. *Id.* On appeal, the Eleventh Circuit reversed the district court's denial of qualified immunity, citing the situation's "tense, uncertain, and rapidly evolving" nature as entitlement for the officer's use of, in its view, objectively reasonable force. *Id.* at 174.

*Alexandre* is one among many cases in which officers applying more force than Lencrerot under similar facts received qualified immunity. *See, e.g., Durruthy v. Pastor*, 351 F.3d 1080, 1085 (11th Cir. 2003) (officer clearing a crowded street forced the uncooperative plaintiff down to the ground and placed him in handcuffs); *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (deputy sheriff grabbed plaintiff by the arm, forced him to the ground, placed him in handcuffs, and held him to the ground for less than one minute). Indeed, the Eleventh Circuit has made clear that, though an officer's use of force may be "unnecessary" in effecting an arrest, merely *de minimis* force is "not unlawful." *Durruthy*, 351 F.3d at 1094.

Here, a reasonable officer in Lencrerot's position could think that Alexander posed a threat to Lencrerot or the nearby officers. The video shows that Alexander refused to comply with courtroom policies, waved his arm in the close proximity of Lencrerot's person, shouted profanities at Lencrerot, and poked his fingers in

Lencrerot's face. Given Alexander's admitted noncompliance with courtroom policies, his aggressive gesticulation, and his increasing belligerence, the encounter was "tense, uncertain, and rapidly evolving" as in *Alexandre*. 789 F. App'x at 174. Moreover, unlike the plaintiff in *Alexandre*, Alexander's behavior demonstrated noncompliance with police orders. Given these facts as stated in the SAC and shown in the video, when Alexander became physical with Lencrerot, Lencrerot's use of force in effecting the arrest was objectively reasonable and not unlawful.

Because Lencrerot's use of force was objectively reasonable, the facts do not demonstrate excessive force in violation of the Fourth Amendment.[45] Finding no constitutional violation, the Court need not address whether the constitutional right at issue was clearly established. Alexander's excessive force claim fails as a

---

[45] The Court reviewed the letter from the Atlanta Citizen Review Board ("ACRB") sharing its determinations on the complaint lodged against Lencrerot. ECF 31-2, at 1. Assuming without deciding that the ACRB investigation could be admissible at trial, it does not affect the qualified immunity analysis. The ACRB "was created [ ] to provide citizen oversight of misconduct accusations against sworn members of the police." *Hall v. City of Atlanta*, 2021 WL 8998469, at *13 (N.D. Ga. Dec. 16, 2021). Qualified immunity is a question of law and is not superseded by a lay investigation. The determinations in the ACRB letter have no legal bearing on whether Lencrerot's actions amount to constitutionally prohibited excessive force.

matter of law, and Lencrerot's motion for summary judgment is **GRANTED** as to that claim.

### iii.    The State-law Claims

Counts III and IV of the SAC assert claims for simple assault, simple battery, and battery under Georgia law (O.C.G.A. §§ 16-5-20, -23, -23.1). The simple assault claim in Count III is based on Lencrerot poking his fingers in Alexander's face.[46] The simple battery and battery claims in Count IV are based on Lencrerot slamming Alexander to the ground.[47]

This Court has supplemental jurisdiction to consider Alexander's state-law claims because they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Supplemental jurisdiction under 28 U.S.C. § 1367(a) is discretionary, and "a court may exercise its discretion to dismiss or retain state claims after dismissing claims subject to its original jurisdiction under 28 U.S.C. § 1367(c)(3)." *Knowles v. Hart*, 825 F. App'x 646, 650 (11th Cir. 2020). Here, the state-law claims are "inextricably intertwined" with the excessive force claims. *Id.* Thus, for the sake of judicial economy, this Court

---

[46]   ECF 24, ¶¶ 24–26.

[47]   *Id.* ¶¶ 27–29.

chooses to exercise supplemental jurisdiction rather than remand the assault and battery claims.

Lencrerot asserts he is entitled to official immunity as to these state-law causes of action.[48] Official immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without willfulness, malice or corruption." *Murphy v. Bajjani,* 282 Ga. 197, 198 (2007). Such agents can be sued "if they (1) negligently perform a ministerial duty, or (2) act with actual malice or actual intent to cause injury while performing a discretionary function." *Daniels v. Gordon,* 232 Ga. App. 811, 813 (1998) (citing *Teston v. Collins,* 217 Ga. App. 829, 830 (1995)); *see also Chisolm v. Tippens*, 289 Ga. App. 757, 760 (2008) (citing *Nichols v. Prather,* 286 Ga. App. 889, 896 (2007)). The negligence or malice determination requires an analysis of the officer's subjective intent. *Croland v. City of Atlanta*, 782 F. App'x 753, 758–59 (11th Cir. 2019) (per curiam) (citing *Jordan v. Mosley*, 487 F.3d 1350, 1357 (11th Cir. 2007)).

Alexander alleges Lencrerot was not acting within his discretionary authority when he poked his fingers in Alexander's face and when he slammed Alexander to the ground.[49] Leniently construing Lencrerot's motion, he argues

---

[48]   ECF 29.

[49]   ECF 24, ¶¶ 25, 28.

that these acts were discretionary.[50] As with qualified immunity, it is well established that making arrests is within the discretionary authority of law enforcement officers for purposes of official immunity. *See, e.g., Brienza v. City of Peachtree City*, 536 F. Supp. 3d 1323, 1331 (N.D. Ga. 2021) (quoting *Mercado v. Swoope*, 340 Ga. App. 647, 650 (2017) (stating the decision to make a warrantless arrest is "considered a discretionary act within the scope of the officer's official functions"); *Reed v. DeKalb Cnty.*, 264 Ga. App. 83, 86 (2003) (describing an officer's decision to make an arrest as discretionary because it requires "personal judgment and deliberation").

Because Lencrerot was acting within his discretionary authority, Alexander was required to show that Lencrerot acted with actual malice. *Kidd v. Coates*, 271 Ga. 33, 33 (1999); *Daniels,* 232 Ga. App. at 813. The Georgia Supreme Court has explained that "actual malice. . . denotes express malice, *i.e.*, a deliberate intention to do wrong, and does not include implied malice, *i.e.*, the reckless disregard for the rights or safety of others." *Murphy*, 282 Ga. at 203 (cleaned up) (quoting *Merrow v. Hawkins*, 266 Ga. 390, 391–92 (1996)). A "deliberate intention to do wrong" is "the intent to cause the harm suffered by the plaintiffs." *Id.* It requires "more than

---

[50]   ECF 29.

harboring bad feelings or ill will about another; rather, ill will must also be combined with the intent to do something wrongful or illegal." *Wyno v. Lowndes Cnty.*, 305 Ga. 523, 531 (2019).

The Court assumes without deciding that, were this only a motion to dismiss, Alexander would have met his pleading burden in alleging that Lencrerot acted with actual malice. Rule 9(b) permits a plaintiff to generally allege malice and intent, and Alexander did as much for the battery claim.[51] However, Alexander cannot overcome official immunity at the summary-judgment stage on pleading alone. The actual malice standard is a demanding one. Here, Alexander would have had to demonstrate that Lencrerot poked his fingers or slammed Alexander to the ground ***for the purpose*** of harming Alexander. *See Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016) (declining to infer actual malice from "misguided" or "reckless" conduct). Alexander does not point to any evidence that plausibly supports such an allegation, nor does he make any argument that Lencrerot's acts themselves demonstrate the actual malice necessary to overcome official immunity. *Wyno*, 305 Ga. at 531. And the Court is not at liberty to "speculate" about Lencrerot's motives or to make "assumptions

---

[51]   ECF 24, ¶ 29. "Defendant J. Lencrerot intentionally, willfully, and ***maliciously*** made physical contact…" (emphasis added).

that simply are not justified by the record, even viewed most favorably to [Alexander]." *Conley v. Dawson*, 257 Ga. App. 665, 668 (2002).

Because Alexander has not raised a genuine dispute of material fact as to the presence of actual malice, Lencrerot is entitled to official immunity as a matter of law. *Black*, 811 F.3d at 1266. Consequently, Lencrerot's motion for summary judgment is **GRANTED** as to the state-law simple assault, simple battery, and battery claims in Counts III and IV.

## III.   Conclusion

Jean-Philippe's motion to dismiss the SAC [ECF 25] is **GRANTED**. Lencrerot's motion for summary judgment [ECF 29] is **GRANTED**. Lencrerot's motion to dismiss [ECF 27] is **DENIED as moot**. The claims against Defendants are **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to enter judgment in favor of Jean-Philippe and Lencrerot and against Alexander, and to close the case.

**SO ORDERED** this 14th day of August, 2023.

Steven D. Grimberg
United States District Court Judge